# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=====

## NO. 03-11-00258-CV

=====

**Randall Holt and Judy Holt, Appellants**

**v.**

**Sondra Kelso, Independent Administrator of the Estate of Helen Jones Schweng, Deceased, Appellee**

=====

### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. C-1-PB-08-010617, HONORABLE GUY S. HERMAN, JUDGE PRESIDING

=====

## M E M O R A N D U M   O P I N I O N

Appellee Sondra Kelso, in her capacity as independent administrator of the estate of Helen Jones Schweng, brought suit against Peggy McCoy, Eugene Braun, and appellants Randall Holt and Judy Holt to recover estate assets.[1] Following a bench trial, the trial court found all four defendants jointly and severally liable to Sondra for breach of fiduciary duty, conversion, theft, and civil conspiracy and awarded damages of $319,203.88. On appeal, the Holts challenge the sufficiency of the evidence to support the judgment and contend that the trial court abused its discretion when it admitted expert testimony from Sondra's brother. For the reasons that follow, we affirm the judgment.[2]

---

[1] Because the parties and other persons involved in this case have the same surname, we refer to individuals by their given names.

[2] Pending before this Court is appellee Sondra Kelso's plea of no jurisdiction. Sondra contends that this Court lacks jurisdiction because the Holts' notice of appeal was not timely. The

## BACKGROUND

Helen Schweng was the maternal grandmother of Sondra Kelso. Randall Holt was Helen's nephew, and Judy Holt is his wife. Peggy McCoy and Eugene Braun, the other two defendants, were also Helen's niece and nephew.[3]

Sondra was born in 1966, and she was the only child of Donna Schweng, Helen's daughter. Donna gave Sondra up for adoption, but they made contact in the early 1990s and developed a relationship. They maintained their relationship until Donna died in February 1997. Donna's will named her boyfriend Paul Caputo as her independent executor and bequeathed her entire estate to him and then to Sondra if he did not survive Donna by 30 days. After Donna died, Judy assisted Paul with his executor duties. Judy searched Paul and Donna's house for relevant documents and found, among other documents, Donna's will, a power of attorney signed by Helen, and uncashed checks payable to Helen. Judy cashed some of the checks and forwarded Helen's power of attorney to Peggy. The power of attorney appointed Donna as her mother's agent and attorney in fact and Peggy as the substitute in the event Donna was not available.

---

Holts' notice of appeal was filed within fifteen days after the deadline for filing their notice of appeal. *See* Tex. R. App. P. 26.1, 26.3. The Holts filed a letter with this Court explaining that the delay in filing the notice of appeal was due to their former counsel's health issues and his inadvertence or mistake. *See Hone v. Hanafin*, 104 S.W.3d 884, 887 (Tex. 2003) ("[R]easonable explanation is 'any plausible statement of circumstances indicating that failure to file within the [specified] period was not deliberate or intentional, but was the result of inadvertence, mistake or mischance.'" (citation omitted)). We imply a motion for extension of time to file the notice of appeal, deem the Holts' notice of appeal timely, and deny Sondra's plea of no jurisdiction. *See* Tex. R. App. P. 26.3; *Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997) (motion for extension of time for filing cost bond "necessarily implied").

[3] Peggy McCoy and Eugene Braun have not appealed the final judgment.

Donna was an only child. She survived her father but predeceased Helen. After her father died, Donna managed Helen's finances and affairs with the power of attorney. Around that time, Helen began living in a nursing facility as she was diagnosed with Alzheimer's Disease and dementia. Donna continued to manage her mother's finances and affairs until Donna died in 1997. After Donna died, Peggy assumed responsibility for Helen's finances and affairs, using Helen's power of attorney in which Peggy was named the substitute agent and attorney in fact.

Helen died on July 31, 2001. Peggy, Eugene, and Randall (the "cousins") applied to administer Helen's estate in July 2005. The cousins did not reference Sondra in the application and claimed that they were the "owners of all of [Helen]'s Estate." The probate court appointed an attorney ad litem to represent any unknown heirs. The attorney ad litem located Sondra and, after unsealing her adoption papers, determined that her inheritance rights had not been severed when she was adopted. Sondra thereafter filed an application to administer Helen's estate. After a hearing, the court found that Sondra was the sole heir of Helen and appointed her as independent administrator of Helen's estate.

Sondra filed this suit to recover estate assets in December 2008. Among her claims, she alleged breach of fiduciary duty by Peggy and conspiracy by all the defendants to unlawfully take assets from Helen, her estate, and her heir. She sought over $500,000 in damages. The case was tried to the court in April 2010. Sondra, Randall, and Judy testified, as well as the attorney ad litem, one of Sondra's friends, one of Helen's caregivers, and Sondra's brother who provided expert testimony as an accountant concerning court-ordered sworn accountings filed by Randall, Peggy, and Eugene. Deposition testimony of Randall, Judy, Peggy, and one of Helen's doctors also was

3

admitted.  The exhibits included Helen's power of attorney, the sworn accountings with back-up financial information, and letters written by Judy to Peggy around the time of Donna's death in 1997.  In the letters, Judy addressed Helen's power of attorney and ideas for transferring assets.  Judy advised Peggy that "[p]ower of attorneys cease at death."

The evidence at trial was undisputed that Peggy used the power of attorney to transfer Helen's assets to the cousins.  She purchased an annuity policy payable to the cousins upon Helen's death with Helen's money, and she wrote checks to herself and Eugene from Helen's accounts while Helen was alive.  She also changed some of Helen's bank accounts to payable on death accounts and added the cousins' names to the accounts.  After Helen died in 2001, Peggy continued to use the power of attorney to transfer Helen's assets to the cousins.  Among other payments, she gave checks to Eugene and Randall from Helen's accounts at Helen's funeral.

The trial court entered judgment for Sondra and awarded her $319,203.88 in damages.  The trial court found all four defendants jointly and severally liable to Sondra for breach of fiduciary duty, conversion, theft, and civil conspiracy.  The parties did not request findings of fact and conclusions of law, but the trial judge stated his reasons for his decision in a letter to the parties.  The Holts filed a motion for new trial that was overruled by operation of law.  This appeal followed.

**ANALYSIS**

The Holts raise six issues on appeal.  In their first, third, fifth, and sixth issues, they contend that the evidence was legally and factually insufficient to support the trial court's findings that they were liable for breach of fiduciary duty, that they converted property belonging to the estate, that the amount converted amounted to $319,203.88, and that they conspired with anyone to breach

4

a fiduciary duty to Sondra or to steal or convert property from Helen's estate. They also challenge the sufficiency of the evidence to support several of the trial judge's statements in his letter to the parties. In their second issue, they challenge the trial court's admission of Sondra's brother's testimony and, in their fourth issue, they contend that the probate court did not possess jurisdiction to render final judgment holding the Holts liable for "theft."

***Sufficiency of the Evidence Challenges***

In their first, third, fifth, and sixth issues, the Holts raise sufficiency of the evidence challenges to the trial court's judgment and the trial judge's letter that explained his decision. Among their arguments, they argue that there was no evidence that they had a fiduciary duty to Sondra or that they conspired with anyone to breach a fiduciary duty to Sondra or to convert or steal property from Helen's estate. They also seek to limit their liability, if any, to amounts that they actually received.

Although the Holts characterize statements in the trial judge's letter to the parties as findings of fact, no findings of fact or conclusions of law were requested or filed as contemplated under the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 296 (providing procedure for party to request findings of fact and conclusions of law after judgment is signed); *see also Cherokee Water Co. v. Gregg Cnty. Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex. 1990) (holding that judge's comments in letter to parties were not findings of fact "as contemplated by rules 296–299 of the Texas Rules of Civil Procedure"); *Texas Bd. of Chiropractic Exam'rs. v. Texas Med. Ass'n*, 375 S.W.3d 464, 482 n.24 (Tex. App.—Austin 2012, pet. denied) (noting that judge's letter to the parties explaining his reasoning did not impact appellate review). We therefore imply "that the

trial court made all findings necessary to support its judgment." *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *see also BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Brazos River Auth. v. Gilliam*, 429 S.W.2d 949, 951 (Tex. Civ. App.—Fort Worth 1968, writ ref'd n.r.e.) (noting that letter of trial court "helpful in giving the trial court's view of the controversy" but that appellate court was "governed by well recognized rule" that, "in the absence of findings of fact and conclusions of law the appellate court will presume that all fact issues having support in the evidence were found in support of the judgment"). We also must affirm the judgment "if it can be upheld on any legal theory that finds support in the evidence." *Worford*, 801 S.W.2d at 109; *see BMC Software*, 83 S.W.3d at 794.

Implied findings of fact are not conclusive and may be challenged for legal and factual sufficiency when the reporter's and clerk's records are included in the appellate record, as is the case here. *See BMC Software*, 83 S.W.3d at 794 (citing, among other authority, *Roberson v. Roberson*, 768 S.W.2d 280, 281 (Tex. 1989)). We review the evidence supporting a trial court's implied findings for legal and factual sufficiency by the same standards applied to a jury verdict. *Roberson*, 768 S.W.2d at 281; *see City of Keller v. Wilson*, 168 S.W.3d 802, 807, 810 (Tex. 2005) (legal sufficiency standard of review); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (factual sufficiency standard of review).

Here, the trial court found all four defendants jointly and severally liable to Sondra for breach of fiduciary duty, conversion, theft, and civil conspiracy and awarded Sondra damages in the amount of $319,203.88. If the evidence supports the trial court's implied findings and the judgment on any one of Sondra's theories of recovery, we must affirm the judgment. *See Worford*,

6

801 S.W.2d at 109. We turn then to review the evidence as to Sondra's civil conspiracy theory of recovery because it is dispositive.

"'Civil conspiracy is a derivative action premised on an underlying tort.'" *Gary E. Patterson & Assocs., P.C. v. Holub*, 264 S.W.3d 180, 204 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (quoting *Gonzales v. American Title Co.*, 104 S.W.3d 588, 594 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)). The elements of civil conspiracy are:

> (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.

*Chon Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005) (citation omitted).

"[P]roof of a conspiracy must usually be made by circumstantial evidence." *Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 453 (Tex. App.—Eastland 2006, pet. denied) (citing *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968)). "Inferences of concerted action may be drawn from joint participation in the transactions and from enjoyment of the fruits of the transactions." *Id.* (citing *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 582 (Tex. 1963)); *see also Lesikar v. Rappeport*, 33 S.W.3d 282, 302 (Tex. App.—Texarkana 2000, pet. denied). As to the element of an unlawful, overt act, a cause of action for conspiracy may be based on a breach of fiduciary duty. *See Lesikar*, 33 S.W.3d at 302 ("Types of torts or unlawful acts on which a cause of action for conspiracy may be based include breach of a fiduciary duty."). To prevail on a claim for breach of fiduciary duty, a plaintiff must prove the existence of the fiduciary relationship and a breach of that duty by the defendant that

7

caused damages to the plaintiff. *Beck v. Law Offices of Edwin J. Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.).

The Holts argue that there was no evidence that they had a fiduciary duty or had a meeting of the minds to conspire with anyone and that Randall's receipt of some of Helen's assets was at most an "innocent" taking. They contend that the assets that they received were non-testamentary assets and that they had a good faith belief that they properly received assets from Helen because they did not know that Sondra's inheritance rights had not been severed until the attorney ad litem unsealed the adoption papers during the pendency of this suit. Sondra's conspiracy theory of recovery against the Holts, however, is not dependent on findings that the Holts had a fiduciary duty to Helen or that the funds that they received were from Helen's estate.

"Once a conspiracy is proven, each conspirator is responsible for all acts done by any of the conspirators in furtherance of the conspiracy." *Paschal*, 215 S.W.3d at 451 (citing *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 926 (Tex. 1979)). Here the evidence established that Peggy had a fiduciary duty to Helen as Helen's agent and attorney in fact pursuant to the power of attorney. *See Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507, 510 (Tex. 1980) (person with fiduciary duty may not use position to self-deal); *Plummer v. Estate of Plummer*, 51 S.W.3d 840, 842 (Tex. App.—Texarkana 2001, pet. denied) ("A power of attorney creates an agency relationship, and an agent owes a fiduciary duty to its principal with respect to matters within the scope of its agency.").

Evidence presented at trial also supported a finding that Peggy breached her fiduciary duty to Helen in furtherance of the defendants' conspiracy to transfer Helen's assets to the cousins.

8

Using the power of attorney during the time period that Helen lacked capacity to manage her own affairs, Peggy changed the character of some of Helen's assets so that they would not be part of Helen's estate upon Helen's death. For example, she used Helen's money to purchase an annuity payable to the cousins upon Helen's death. She also changed checking and savings accounts to add the cousins' names and to make them payable on death accounts. She further used the power of attorney after it had expired to transfer additional assets to the cousins. This evidence supported a finding that Peggy breached her fiduciary duty to Helen by transferring Helen's assets—assets that would have otherwise been estate assets—to the cousins during Helen's life and after Helen's death and that her breach caused damage to Helen and Sondra, as the administrator of Helen's estate. *See Beck*, 284 S.W.3d at 429.

Further, there was evidence that supported a finding that Randall and Judy had a "meeting of the minds" with Peggy and Eugene in these transactions. *See Chon Tri*, 162 S.W.3d at 556–57. The evidence established that the Holts were aware of Sondra prior to Donna's death, the terms of the wills of Donna and Helen, and the expiration of the power of attorney at the time of Helen's death. Despite this knowledge, Judy sent the power of attorney to Peggy after Donna died with suggestions as to how to transfer assets and cashed several checks payable to Helen shortly after Donna died. Randall accepted payments from Helen's accounts and the payment from the annuity after Helen died, and the cousins filed an application for letters of independent administration and determination of heirship in 2005, claiming that the cousins were the "owners" of all of Helen's estate without disclosing Sondra. *See Paschal*, 215 S.W.3d at 453 (inferences of conspiracy "may be drawn from joint participation in the transactions and from enjoyment of the fruits of the

transactions"). This evidence supports a finding that the Holts had a meeting of the minds with Peggy and Eugene to divide Helen's assets between the cousins and to deprive Sondra of her rightful inheritance. *See id.*

Although the Holts presented evidence to support their position that they did not conspire with Peggy and Eugene, it was within the province of the trial court, as the fact finder, to resolve the conflicts in the evidence. *See City of Keller*, 168 S.W.2d at 819–20; *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (fact finder remains sole judge of witnesses' credibility and weight to be given their testimony). Based upon our review of the evidence, we conclude that the evidence was legally and factually sufficient to support the trial court's finding that the defendants, including the Holts, were liable to Sondra for civil conspiracy. *See BMC Software*, 83 S.W.3d at 794; *Cain*, 709 S.W.2d at 176.

As to the amount of damages awarded by the trial court, the Holts do not challenge the sufficiency of the evidence to support the damages awarded to Sondra under her conspiracy theory of recovery. To the extent that they argue that they should only be liable for amounts, if any, that they received from Helen, "co-conspirators are each responsible for the damage the conspiracy caused." *Chu v. Hong*, 249 S.W.3d 441, 445–46 (Tex. 2008) (citing *State v. Standard Oil Co.*, 107 S.W.2d 550, 559 (Tex. 1937)). The Holts then are liable for all of the damages that the conspiracy caused. *See id*.

We overrule the Holts' issues to the extent that they challenge the trial court's finding that they were liable to Sondra for civil conspiracy. Because the evidence supports affirming the judgment based upon civil conspiracy, we do not address the Holts' issues addressing Sondra's other

theories of recovery. *See* Tex. R. App. P. 47.1; *BMC Software*, 83 S.W.3d at 794 (upholding

judgment if it can be sustained on any legal theory supported by the evidence).

### Expert Testimony

In their second issue, the Holts challenge the admission of Sondra's brother's

testimony as an expert. They contend that he was unqualified and that his testimony was unreliable

and not relevant. *See* Tex. R. Evid. 702; *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797,

800 (Tex. 2006).[4]

We review the trial court's admission of expert testimony for abuse of discretion. *See*

*Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex. 2006); *Helena Chem. Co. v. Wilkins*,

47 S.W.3d 486, 499 (Tex. 2001). "'The test for abuse of discretion is whether the trial court acted

without reference to any guiding rules or principles.'" *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex.

1996) (quoting *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995)).

"Moreover, we will not reverse a trial court for an erroneous evidentiary ruling unless the error

probably caused the rendition of an improper judgment." *Owens-Corning Fiberglas Corp.*

*v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (citing Tex. R. App. P. 44.1; *Gee v. Liberty Mut. Fire Ins.*

*Co.*, 765 S.W.2d 394, 396 (Tex. 1989)).

"Expert testimony is admissible if (1) the expert is qualified, and (2) the testimony

is relevant and based on a reliable foundation." *Mendez*, 204 S.W.3d at 800 (citing *Wilkins*,

---

[4] To the extent that the Holts argue that the trial court erred by considering Sondra's brother's testimony because Sondra failed to follow the Texas Rules of Civil Procedure concerning the designation of experts and the disclosure of expert reports, the Holts did not make this argument to the trial court and, therefore, have waived it. *See* Tex. R. App. P. 33.1.

11

47 S.W.3d at 499; *Robinson*, 923 S.W.2d at 556). An expert's opinions must be supported by facts in the record. *See Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 729 (Tex. 2003) (per curiam). The Supreme Court in *Mendez* listed the *Robinson* factors that trial courts may consider in determining whether expert testimony is reliable but made clear that "these factors are non-exclusive and that Rule 702 contemplates a flexible inquiry." 204 S.W.3d at 801 (citing *Robinson*, 923 S.W.2d at 557).

The Holts urge that Sondra failed to show that her brother had estate accounting experience and, therefore, that he was not qualified to testify, analogizing accountants with medical doctors who are not automatically qualified by their medical degrees to testify as an expert on every medical question. *See Broders*, 924 S.W.2d at 152. In *Broders*, the Texas Supreme Court stated that "the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question" "would ignore the modern realities of medical specialization." *Id*. Although the testimony of an accountant who specialized in probate matters might have been entitled to more weight, the defendants themselves testified to amounts that they received, and documents showing the transfers of assets from Helen to the cousins were admitted for the court's review. Further, Sondra's brother testified that he was an accountant, and his testimony included detailing his education and work experience. In this context, we cannot conclude that Sondra's brother was not qualified. *See Mendez*, 204 S.W.3d at 800–01.

As to the relevancy and reliability of her brother's testimony, he testified concerning a primary dispute in the case—the amount of Helen's assets that Peggy transferred to the defendants—and his analysis was based upon the sworn accountings and documents which were admitted as exhibits at the trial. *See* Tex. R. Evid. 401, 402, 702; *Pitzner*, 106 S.W.3d at 729

(opinion must be supported by facts in record). The Holts did not provide expert testimony to contradict his conclusions or dispute the accuracy of the underlying documents. As to the Holts' allegation of bias, it was for the trial court to judge the weight to be given his testimony. *See Jackson*, 116 S.W.3d at 761.

On this record, we cannot conclude that the trial court abused its discretion by admitting Sondra's brother's testimony concerning the sworn accountings. *See Larson*, 197 S.W.3d at 304–05. Further, given that the amounts of funds transferred to the cousins were either admitted or documented, we also conclude that, even if the trial court abused its discretion by admitting his testimony, the error did not probably cause the rendition of an improper judgment.[5] *See Malone*, 972 S.W.2d at 43. We overrule the Holts' second issue.

## CONCLUSION

For these reasons, we affirm the trial court's final judgment.

---

[5] The evidence conclusively showed that the three family units each received over $72,000 upon Helen's death from the annuity policy purchased by Peggy with the power of attorney, as well as receiving payments after Helen's death. For example, according to Randall's accounting, he received approximately $10,000 in August 2001 and another $20,000 in November 2002 from Helen's checking and savings accounts that Peggy changed to payable on death accounts. There also was evidence that funds from Helen's bank accounts were used to pay the cousins' attorney's fees and that payments from Helen's accounts were made during Helen's life to the cousins and Judy.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Henson, and Goodwin
   Justice Henson Not Participating

Affirmed

Filed:   February 26, 2014